## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                         )
KAMAL ALY,                               )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )          Civil Action No.
                                         )          08-40099-FDS
MOHEGAN COUNCIL, BOY SCOUTS              )
OF AMERICA,                              )
                                         )
            Defendant.                   )
_____)


## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION FOR JUDGMENT AS A MATTER OF LAW,
## OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL

**SAYLOR, J.**

This is a workplace discrimination action.  Plaintiff Kamal Aly was employed as a District

Executive by defendant Mohegan Council, Boy Scouts of America, from August 2001 until he

resigned in October 2005.  Aly is of Egyptian descent and a Muslim.  He alleged that Mohegan

Council denied him a timely career evaluation, professional training, and appropriate

compensation because of his national origin and religion.  The case was tried to a jury in

September 2011; the jury found that Mohegan Council discriminated against Aly in violation of

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*[1]

Pending before the Court is Mohegan Council's motion for judgment as a matter of law,

or, in the alternative, a new trial.  Plaintiff has also moved for attorney's fees.  For the following

---

[1] The jury also found that Mohegan Council was not liable under Mass. Gen. Laws ch. 151B, § 4.

reasons, defendant's motion will be denied in part and granted in part, and plaintiff's motion will be granted.

## I.   Procedural Background

Plaintiff Kamal Aly is Egyptian-American and a Muslim.  He was hired by Mohegan Council, Boy Scouts of America, on August 6, 2001, as a District Executive.  Aly worked at Mohegan until his resignation on October 19, 2005.

On May 23, 2008, Aly filed a *pro se* complaint alleging that Mohegan Council violated his rights under Title VII and Mass. Gen. Laws ch. 151B.  Specifically, Aly alleged that he did not receive training and a promotion because of his national origin and religion.  He obtained counsel in this matter in March 2010.

A jury trial was held from September 26 through September 29, 2011.  The evidence at trial included, among other things, defendant's payroll records for 2005 and Aly's performance reviews.  The witnesses included James Kennedy, the former Executive Director of Mohegan Council, and John "Jay" Garee, Kennedy's replacement as Executive Director.  Both Kennedy and Garee supervised Aly in their role as Executive Director.  They testified about Aly's work performance and interaction with Mohegan volunteers, the decision not to send him to Professional Development Level III ("PDL III") training, and his resignation.  Aly also testified.[2]

Defendant moved for a directed verdict, which the Court denied.  The jury then found in favor of Aly on the Title VII claim, and defendant on the Chapter 151B claim.  The jury awarded

---

[2] The other witnesses were Thanh Nguyen, the office manager at Mohegan Council; Richard Trier, the Northeast Regional Director of the Boy Scouts of America; Nestor Chevalier, a non-Egyptian, non-Muslim employee who received the PDL III training and was promoted; and David Libbey, a long-time volunteer with the Boy Scouts.

Aly $152,500 in back pay and $300,000 in punitive damages.[3]  Defendant has moved for

judgment as a matter of law, or in the alternative, for a new trial.  Aly has moved for an award of

attorney's fees.

## II.     <u>Standard of Review</u>

Judgment as a matter of law may be granted when the evidence, considered in the light

most hospitable to the verdict, "is so one-sided that [the moving party] is plainly entitled to

judgment, for reasonable minds could not differ as to the outcome."  *Colasanto v. Life Ins. Co. of*

*N. Am.*, 100 F.3d 203, 208 (1st Cir. 1996) (citation omitted); *accord Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 149-51 (2000); *Zimmerman v. Direct Fed. Credit Union*,

262 F.3d 70, 75 (1st Cir. 2001) ("[T]he jury's verdict must stand unless the evidence, taken in the

light most favorable to the prevailing party, points unerringly to an opposite conclusion.").

Similarly, a court may grant a new trial when "the outcome is against the clear weight of

the evidence such that upholding the verdict will result in a miscarriage of justice."  *Goulet v. New*

*Penn Motor Express, Inc.*, 512 F.3d 34, 44 (1st Cir. 2008) (quoting *Ramos v. Davis & Geck,*

*Inc.*, 167 F.3d 727, 731 (1st Cir. 1999)); *see also Sheek v. Asia Badger, Inc.*, 235 F.3d 687, 700

(1st Cir. 2000) ("We will uphold the jury's verdict unless the evidence points 'to one conclusion

and one conclusion only:  that the losing party was entitled to win.'" (citations omitted)).  "[A]

trial judge may order a new trial 'even where the verdict is supported by substantial evidence.'"

*Jennings v. Jones*, 587 F.3d 430, 439 (1st Cir. 2009) (quoting *Lama v. Borras*, 16 F.3d 473, 477

(1st Cir. 1994)).

---

[3] The jury found that plaintiff was not entitled to damages for emotional distress.

III.   **Analysis**

A.   **Liability**

Defendant contends that at trial plaintiff failed to make a *prima facie* showing of

discrimination under the *McDonnell-Douglas* three-part burden-shifting framework.  The

principle purpose of that framework is to serve as a method for resolving motions for summary

judgment in discrimination cases lacking direct evidence of discriminatory intent.  *See, e.g.*,

*Kosereis v. Rhode Island*, 331 F.3d 207, 312-13 (1st Cir. 2003).

When an employment discrimination action has been submitted to a jury, "the

burden-shifting framework has fulfilled its function, and backtracking serves no useful purpose.

To focus on the existence of a *prima facie* case after a discrimination case has been fully tried on

the merits is to 'unnecessarily evade[] the ultimate question of discrimination vel non.'"  *Sanchez*

*v. Puerto Rico Oil Co.*, 37 F.3d 712, 720 (1st Cir. 1994) (quoting *United States Postal Serv. Bd.*

*of Govs. v. Aikens*, 460 U.S. 711, 713-14 (1983)); *see Keisling v. SER-Jobs for Progress*, 19

F.3d 755, 761 (1st Cir. 1994) ("The shifting of the burden of production . . . does not always

correspond neatly to the orderly presentation of evidence at trial," and thus "the proper question .

. . to ask is . . . whether [plaintiff] has failed to carry the ultimate burden of persuasion upon

consideration of all the evidence presented at trial."); *Mesnick v. General Electric Co.*, 950 F.2d

816, 825 (1st Cir. 1991).[4]

 Accordingly, the Court will examine all of the evidence to determine whether the jury

could have reasonably determined that defendant's actions were improperly motivated by

---

[4]  *But see Currier v. United Technologies Corp.*, 393 F.3d 246, 254 (1st Cir. 2004) (applying *McDonnell-Douglas* framework in deciding motion for judgment as a matter of law after jury verdict).

discrimination, without regard to the *McDonnell-Douglas* framework.[5]

1.      **Judgment as a Matter of Law**

a.      **Evidence of Fifteen or More Employees**

One disputed issue at trial was the number of employees of Mohegan Council.  Congress

has limited Title VII liability to employers with "fifteen or more employees for each working day

in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. §

2000e(b).  This employee-numerosity requirement is not a jurisdictional prerequisite, but rather an

element of plaintiff's claim for relief.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006).

Defendant contends that the jury could not have reasonably concluded that the Council

employed 15 or more employees for 20 or more weeks in 2005.  There is no dispute that the

Council employed at least 14 employees for at least 20 weeks.  In addition, defendant's payroll

records indicate that an employee named Quan Nguyen worked for the Council for 12 weeks.

Plaintiff thus needed to show that one other employee, or combination of employees (full-time or

part-time), worked at least eight additional weeks.  Thanh Nguyen, the office manager, testified

that some seasonal employees worked longer than seven weeks, and that some of them worked

part-time "year round."  (*See* Tr. 2-117:15-16).  The testimony is somewhat unclear as to whether

---

[5] Regardless, plaintiff established a *prima facie* case of discrimination.  To make such a showing, plaintiff must establish that (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) the position remained open or was filled by a person with similar qualifications.  *See Ugurhan Akturk Kosereis*, 331 F.3d 207, 212 (1st Cir. 2003).  It is undisputed that plaintiff is a member of a protected class.  Plaintiff presented evidence that he received positive feedback and evaluations of his job performance, was given additional responsibilities, and that it was recommended that he receive PDL III training—a prelude to promotion.  Despite this, he was not sent to the training or promoted and a similarly-qualified employee was.  This showing is sufficient to meet plaintiff's relatively light burden of establishing a *prima facie* case.  *See Mesnick*, 950 F.2d at 823.  Defendant contends that unrebutted evidence of plaintiff's declining work performance demonstrates that he was not qualified for the job.  However, the Court cannot "consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case."  *Melendez v. Autogermana, Inc.*, 622 F.3d 46, 51 (1st Cir. 2010).

those employees overlap with the 14 year-round employees whose employment is not in dispute. It is true that Ms. Nguyen testified that defendant had fewer than 15 employees working 20 weeks or more. (*See* Tr. 2-113:17-18). But the jury was free to disbelieve that portion of her testimony, and to rely on her other statements in concluding that the statutory threshold had been met.

The evidence is surprisingly ambiguous for something as seemingly straightforward as determining who was on an organization's payroll. However, the jury could have reasonably concluded that Quan Nguyen was employed for 12 weeks and at least one of the seasonal workers was employed for eight weeks, or that at least one of the seasonal workers worked year-round. In either case, the jury's determination that defendant had 15 or more employees for 20 or more weeks in 2005 was not unreasonable. At the very least, the evidence does not "point[] unerringly to an opposite conclusion." *Zimmerman*, 262 F.3d at 75.

### b.    Evidence of Discrimination

At trial, plaintiff presented evidence that he was qualified for the job and that, based on his job performance, he was recommended for PDL III training that would lead to a promotion.[6] He did not receive the training or the promotion, and another non-Egyptian, non-Muslim employee did. Plaintiff also presented evidence that no other employee who had been recommended for PDL III training had been denied it. (*See, e.g.*, Tr. 2-180:11-17; Tr. 3-163:4-12; Tr. 4-28:15-18).[7] Most of defendant's evidence consisted of explanations for the decision by the decisionmakers in this case—Garee and Kennedy—who stated that plaintiff's work performance

---

[6] For example, Garee testified that, based on his evaluations, plaintiff had earned PDL III training. (Tr. 2-137:18-138:21).

[7] Garee testified that the only other individuals who were recommended for the training but did not receive it voluntarily left the Council before the training was provided. (Tr. 2-131:10-132:19).

had declined and that Boy Scout volunteers reported a number of complaints about his personality and dependability.   At trial, Garee testified as to when he first learned plaintiff felt discriminated against and how he responded to those allegations; his testimony was at least arguably contradictory.[8]  There was also evidence that plaintiff's performance evaluations declined when Garee began working for Mohegan Council and that Garee concluded that terminating plaintiff's employment was a "serious consideration" after working for the Council for only 16 days.  (*See* Tr. 2-128:12-17).[9]

This is far from compelling evidence that discriminatory animus was a motivating factor in defendant's decision; indeed, the evidence is thin at best.  However, it is not so one-sided that no jury could reasonably find that discrimination occurred.  Moreover, the weight of much of this evidence depends on credibility determinations, which the jury apparently made in plaintiff's favor.  *See Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 22 (1st Cir. 2002) ("It is for jurors, not judges, to weigh the evidence and determine the credibility of witnesses." (quoting *Insurance Co. of N. Am. v. Musa*, 785 F.2d 370, 372 (1st Cir. 1986)).

Accordingly, defendant's motion for judgment as a matter of law will be denied.[10]

---

[8] Plaintiff's counsel, without objection, emphasized these apparent contradictions to attack Garee's credibility in his closing argument.  (*See* Tr. 4-45:16-46:17).

[9] Plaintiff also presented evidence that Garee did not respond to e-mails from plaintiff concerning his training and promotion, but quickly sent a notice to all Council members and employees regarding plaintiff's resignation on the day that he resigned.  (Tr. 2-162:14-163:5).

[10] Defendant also contends that plaintiff's claims are barred by the statute of limitations.  Defendant first raised this issue at summary judgment, and the Court denied its motion.  Defendant has not presented any additional evidence or any substantively different arguments.  Accordingly, for the reasons stated in the Court's prior order, defendant's motion for judgment as a matter of law based on the statute of limitations will be denied.

2.     <u>New Trial</u>

Although perhaps a closer call, defendant is likewise not entitled to a new trial.  As discussed, although the evidence of discriminatory animus was weak, after review of the parties' memoranda and supporting materials, the Court concludes that the verdict is not against the demonstratable weight of the credible evidence, nor has it resulted in a blatant miscarriage of justice.  *See Marcoux v. Shell Oil*, 524 F.3d 33, 40 (1st Cir. 2008); *Lama*, 16 F.3d at 477 ("[W]hen an argument that the evidence was insufficient forms the basis of a motion for new trial, the district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law."); *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 570 (1st Cir. 1987) ("Although the district court admitted that the evidence supporting plaintiff's claim was 'awful thin,' we believe that it correctly denied defendants' new trial motion because the verdict was not so improper as to constitute a miscarriage of justice.").

B.     **Punitive Damages**

Defendant contends that there was insufficient evidence to allow the jury to award plaintiff punitive damages.  Under Title VII, punitive damages are available in "only a subset of cases involving intentional discrimination."  *Kolstad v. ADA*, 527 U.S. 526, 534 (1999).  The justification for awarding punitive damages "lies in the evil intent of the defendant," thus, "a positive element of conscious wrongdoing is always required."  *Id.* at 538 (internal quotations and citations omitted).  Accordingly, "[t]o establish a basis for punitive damages [under Title VII], the plaintiff must, in addition to proving intentional discrimination, 'show[] that the employer acted with malice or reckless indifference to federally protected rights.'"  *Tobin v. Liberty Mut. Ins.*

8

*Co.*, 553 F.3d 121, 148 (1st Cir. 2009) (quoting *McDonough*, 452 F.3d at 23); 42 U.S.C. §

1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge

that it may be acting in violation of federal law, not its awareness that it is engaging in

discrimination." *Kolstad*, 527 U.S. at 535; *McDonough v. City of Quincy*, 452 F.3d 8, 24 (1st

Cir. 2006). Put another way, to be liable for punitive damages, the employer must at least act

with "reckless or callous indifference to the federally protected rights of others." *See Kolstad*,

527 U.S. at 536 (quoting *Smith*, 461 U.S. at 56); *Tobin*, 553 F.3d at 148.[11]

 Even construed in the light most favorable to the verdict, there was no evidence presented

of reckless or callous indifference to plaintiff's federally-protected rights. The only evidence from

which the jury could infer that defendant knew that its actions would violate federal law was

Garee's testimony that he was generally aware of federal and state anti-discrimination laws in

2005. (Tr. 2-152:19-153:11).[12] A party's mere awareness of the existence of anti-discrimination

laws, without more, is not enough to prove that defendant subjectively perceived that its actions

could violate plaintiff's federal rights. *See Tobin*, 553 F.3d at 148; *Iacobucci v. Boulter*, 193 F.3d

14, 26 (1st Cir. 1999). If such awareness were sufficient to subject an employer to punitive

damages, then punitive damages would be appropriate virtually every time a jury finds

discrimination. *See Kolstad*, 527 U.S. at 534-37 ("Congress plainly sought to impose two

---

 [11] In *Kolstad*, the Supreme Court provided examples of when a finding of intentional discrimination would not give rise to punitive damages. 527 U.S. at 536-37. Specifically, this may occur if the employer is unaware of the relevant federal prohibition, believes that it can lawfully discriminate, the theory of discrimination is novel or poorly recognized, or the employer believes that its discrimination falls within a statutory exception. *Id.*; *accord McDonough*, 452 F.3d at 24.

 [12] Specifically, Garee testified that he was aware of federal and state laws providing that employment decisions may not be based on national origin or religion. (Tr. 2-152:24-153:2).

standards of liability—one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award."); *Tobin*, 553 F.3d at 148.[13]

Nor is there evidence that defendant's conduct was motivated by evil intent.  Indeed, given the thin evidence of discriminatory animus, this case barely survived summary judgment, a motion for directed verdict, and a motion for a new trial.  In other words, making all possible inferences in plaintiff's favor, this Court determined that there was just enough evidence go to trial and sustain the jury's verdict.  Such meager evidence falls far short of showing the sort of "reckless or callous indifference to the federally protected rights of others" necessary to subject defendant to punitive damages.  *Kolstad*, 527 U.S. at 536 (quoting *Smith*, 461 U.S. at 56); *see also Iacobucci*, 193 F.3d at 27 (finding punitive damages inappropriate as a matter of law where defendant understood his federal legal obligations but there was a "dearth of record evidence . . . as to [defendant's] evil motive and/or subjective awareness" that he was violating those obligations).

Simply put, while there is sufficient evidence to support the verdict finding that discrimination was a motivating factor in defendant's decisionmaking, there is not sufficient evidence to support an award of punitive damages.  Accordingly, defendant's motion for judgment as a matter of law as to the punitive damages award will be granted.

## IV.   Attorney's Fees

Plaintiff has also moved for an award of attorney's fees.  Title VII provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including

---

[13] Moreover, such a rule would create an odd incentive for employers; to avoid punitive damages awards, an employer might avoid providing training as to its legal obligations under the anti-discrimination laws.

expert fees) as part of the costs . . . ." 42 U.S.C. § 2000e-5(k).  Although phrased permissively,

fee awards for prevailing parties in civil rights cases are "virtually obligatory."  *See Race v.*

*Toledo-Davila*, 291 F.3d 857, 858 (1st Cir. 2002) (citing *Gay Officers Action League v. Puerto*

*Rico*, 247 F.3d 288, 292 (1st Cir. 2001)).

      The First Circuit follows "the 'lodestar' approach, which calculates reasonable attorneys'

fees as 'the number of hours reasonably expended multiplied by a reasonable hourly rate.'"

*Comcast of Mass. I, Inc. v. Naranjo*, 303 F. Supp. 2d 43, 50 (D. Mass. 2005) (quoting *Furtado v.*

*Bishop*, 635 F.2d 915, 920 (1st Cir. 1980)).  A reasonable hourly rate is measured according to

the prevailing market rates in the relevant community and by considering factors such as "the type

of work performed, who performed it, the expertise that is required, and when it was

undertaken." *Mountain Cable Co. v. Choquette*, 53 F. Supp. 2d 107, 114 (D. Mass. 1999)

(quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984)).  To determine the

number of hours reasonably spent, the Court must subtract from the number of hours actually

spent hours which were "duplicative, unproductive, excessive, or otherwise unnecessary." *Id.*

(quoting *Grendel's Den*, 749 F.2d at 950).

      This figure represents the lodestar; the Court may adjust the lodestar upward or

downward to reflect other factors, including the result obtained and the time and labor actually

required to handle the matter efficiently. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336

(1st Cir. 2008); *Choquette*, 53 F. Supp. 2d at 114-15 (citing *Grendel's Den*, 749 F.2d at 951).

"The First Circuit considers three meanings of the term 'results obtained':  plaintiff's success on

each claim, relief actually achieved, and the societal importance of the right which has been

vindicated." *Choquette*, 53 F. Supp. 2d at 116; *accord Coutin v. Young & Rubicam, P.R., Inc.*,

11

124 F.3d 331, 339 (1st Cir. 1997) ("If a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order.").

Plaintiff here has requested $70,800 in attorneys' fees.[14]  Plaintiff's counsel charged $250 per hour.  Additionally, counsel for plaintiff have provided detailed time records for their work on this case.  Plaintiff lists 2.5 hours and $50 in costs related to the preparation of a *pro hac vice* motion.  At the motion hearing, plaintiff's counsel stated that he sought the motion because he was not admitted to practice in federal court but that his law partner was and he could have tried the case under his direction.  Accordingly, these fees were unnecessary and will be removed from the lodestar calculation.[15]  The Court is unable to point to any other individual entries that appear to be "duplicative, unproductive, excessive, or otherwise unnecessary" in relation to the specific tasks plaintiff's counsel completed.  Thus, $70,175 is a reasonable amount in fees.

Defendant does not otherwise contest the reasonableness of plaintiff's counsel's hourly rate or the number of hours billed.  The Court sees no obvious reason to disagree.  Accordingly, plaintiff will be awarded $70,175 in attorney's fees.

## V.    <u>Conclusion</u>

For the foregoing reasons, defendant's motion for judgment as a matter of law, or in the alternative, motion for a new trial is GRANTED as to the punitive damages award and is otherwise DENIED.  Plaintiff is awarded $70,175 in reasonable attorneys' fees and $1,552.57 in reasonable costs with interest as provided by law.

---

[14] This includes fees preparing for post-trial motions.

[15] Plaintiff lists $1,602.57 in costs.  Other than the $50 incurred moving for *pro hac vice* status, plaintiff's listed costs are the types of expenses customarily charged to clients and are appropriately sought here, and are therefore appropriate.  *See Invessys, Inc. v. McGraw-Hill Companies, Ltd.*, 369 F.3d 16, 22 (1st Cir. 2004).  Accordingly, plaintiff's costs will be reduced to $1,552.57.

**So Ordered.**

                                        /s/ F. Dennis Saylor
                                        F. Dennis Saylor IV
                                        United States District Judge

Dated:  May 18, 2012